ORLEANS,
*March,*
1832.

## CHARLES DURKEE *vs.* LEANDER LELAND.

An attorney on the trial of a cause is not obliged to produce a paper which his client has entrusted to him as counsel in the case, and in professional confidence.

*Reasonable* notice must be given to a party to produce a paper in his possession, or he cannot be compelled to produce it. Notice given at the trial of a cause is not sufficient.

Where one received a bill of sale of certain articles of personal property, and was thereby authorized to take possession of them whenever he chose, and account for them to the owner at what they might bring at auction,—it was held, that he was accountable for those only of which he had taken possession, and not even for those, unless he had so conducted as to manifest an intention to make them his own, or had made them his own by such gross negligence as ought to make him accountable for their value.

Assumpsit on a promissory note, dated May 2d. A. D. 1828, for $49,90 and interest. Plea, the *general issue,* with notice of payment in a waggon and sundry other articles, herein after mentioned. The plaintiff having proved, and read in evidence, the note declared on, the defendant called John H. Kimball, Esq. attorney of the plaintiff, as a witness to prove, that the plaintiff held a bill of sale of a quantity of sap buckets, one or more cauldron kettles, and a sap holder, executed by the defendant to him on the 3d day of May, A. D. 1828 ; which property the plaintiff was to dispose of, and apply the proceeds on the note in question. The witness objected, that if he had seen or knew of such a paper, his information on the subject was communicated by the plaintiff to the witness as counsel in this cause, and in professional confidence. But the court decided that he was not privileged from disclosing the fact, if within his knowledge, that such a paper existed, and what had become of it, though he was not at liberty to disclose to the prejudice of his client, any declarations of his, made to the witness as counsel. He then testified, that the plaintiff lodged such a paper with him when he left the note to be sued, and that he had the paper in court. The defendant called for the production of it, to be used as evidence on the trial ; to which the counsel

ORLEANS,
March,
1832.

Durkee
vs.
Leland.

for the plaintiff objected ; but the court ordered it produced, and it was read in evidence, and was as follows :

"*Barton, May 3d,* 1828.

This day sold and delivered to *Charles Durkee,* 250 sap buckets, one cauldron kettle, and one sap holder ; said articles are now in the sugar lot belonging to Albert Leland. Said *Durkee* shall have a right to take possession of said property when he shall see proper, and account to me for the same at what said articles will bring at auction.                      *Leander Leland.*"

It was admitted that a waggon, worth about $25,00, had been received as part payment of the note, and that the plaintiff had sold the cauldron kettle, mentioned in the bill of sale, for $4,00, which was also to be applied. Evidence was given tending to show, that the note in question was given on a settlement between the plaintiff and defendant, and constituted the only demand which the plaintiff afterwards held against the defendant, and that the object of the bill of sale was, to provide means for the payment and satisfaction of said note. The evidence also tended to show, that at the time of giving said bill of sale, the property specified was in the different places therein mentioned ;—that the plaintiff afterwards made some attempts to sell the same at private sale ; and that an agent of his let out fifty of the buckets for use one season ; but it did not appear that the plaintiff had in fact sold any of the buckets or the sap holder, but the same still remained scattered in the neighbouring sugar places, and had been suffered to go to waste and decay. The plaintiff contended, and requested the court to charge, that he was under no obligation to take possession or make any disposition of the property mentioned in the bill of sale, and had at all times a right to sue the note and collect any balance not paid by the actual proceeds of said property. The court instructed the jury, that the bill of sale, taken in connexion with the evidence of the purpose for which it was executed, was to be construed as a pledge, or rather a mortgage, of the property to the plaintiff to secure the payment of the note in question, with a power to sell, the better to carry the object into effect ;—that it did not operate at once as payment or part payment of the note, but passed the legal interest in the property to the plaintiff, whose duty it was to execute the object of the transfer, or else to re·nounce the benefit of it, and give notice thereof to the defendant ; —that the provision for selling at auction was introduced for the benefit of the plaintiff, who might waive it, and make any other disposition of the property, if equally beneficial to the defendant ;— that the plaintiff would, therefore, be bound to account, by way of

ORLEANS,
March,
1832.

Durkee
vs.
Leland.

payment on the note, for any of the property which he should sell, appropriate to his own use, destroy, or suffer to become useless and of no value, for want of reasonable and proper care on his part; and that, if they found from the evidence that property mentioned in the bill of sale, sufficient at a fair cash value, to pay the balance of the note, after deducting the wagon and cauldron kettle, had thus become useless and of no value, through the want of such care on the part of the plaintiff, they would find the note paid, and return a verdict for the defendant; and if to an amount less than the balance of the note, then the plaintiff would be entitled to their verdict for the difference. Verdict and judgement for the defendant.

The plaintiff filed exceptions to the opinion and charge of the court; whereupon the case was brought up to this Court, where, after argument by *Kimball* for the plaintiff, and *Cushman* for the defendant,

The opinion of the Court was delivered by

WILLIAMS, J.—The first question in the case is, whether Mr. Kimball, who is an attorney of the court, and was the attorney of the plaintiff in this case, on the trial in the county court, was properly compelled to testify in relation to the papers in his possession, and to produce the same. Attornies are not compelled, nor are they permitted, to give evidence of facts which come to their knowledge from the confidential communications of their clients in the course of their professional duty. There seems to be some discrepancy in the authorities, whether the rule, as to the exclusion of the evidence of solicitors and attornies, extends to all communications made by a client, while consulting them professionally, or whether it is confined only to those made for the purpose of instituting or defending an action. *Lord Tenterden*, in the case of *Wadsworth* vs. *Hamshaw and Aspinal*, (found in a note to the case of *Cromack* vs. *Heathcote*, 2 *B. & B.* 4,) and afterwards in the case of *Williams et al.* vs. *Mudie et al.*, 1 *Car. & P.* 158, was disposed to confine it to the latter case; and he was followed in this by *C. J. Best*, in the case of *Broad* vs. *Pitt*, 3 *Car. & P.* 518. These, however, were decisions of *nisi prius*. It appears to me that the rule laid down by the court of common pleas, in the case of *Cromack* vs. *Heathcote*, 2 *B. & B.* 4, is the better law, and is confirmed by the current of authorities. I think *Scarlett*, in the case of *Williams* vs. *Mudie et al.*, is fully sustained in his assertion, " that the law is clear, that any communication to an

ORLEANS,
March,
1832.

Durkee
vs.
Leland.

attorney professionally, whether about an estate, or otherwise, is a privileged communication." In the present case, it may be remarked, that all the information, which Mr. Kimball had upon the subject of the paper, was communicated by the plaintiff to him as counsel in the case, and in professional confidence. Under these circumstances, he would not be compelled or permitted to give any evidence in relation to those communications, nor could he be compelled to produce any papers which had been intrusted to him by his client. The possession of the attorney was, for this purpose, the possession of the client. An attorney or counselor is not obliged to produce to a grand jury a paper entrusted to him by his client.—*State* vs. *Squires*, 1 *Tyler*, 147 ; *Anon.* 8 *Mass.* 370. The most which could be required of Mr. Kimball, was to state whether such a paper was in existence, and where he last saw it, according to the cases of *Kingston* vs. *Gale*, 8 *Viner*, 548 ; *Brandt* vs. *Klein*, 17 *Johnson*, 335 ; *Jackson* vs. *McVey*, 8 *Johnson*, 330 ; though it appears to me, that going thus far is at variance with the general principle applicable to that subject, if the deed or writing was communicated or intrusted to the attorney in professional confidence. In relation to papers which are in the hands of the opposite party, the common rule is, that if he refuse to produce them on reasonable notice, secondary evidence may be given of their contents. But notice given at the trial is not sufficient.—1 *Starkie*, 539, (*cases cited in note.*) It is provided by statute, that parties may be compelled to produce papers under penalty of a nonsuit or default in case of neglect ; but this can only be enforced after reasonable notice ; and the statute applies only to the parties and not to their attornies, counselors, or solicitors.

Neither the rule of the common law, nor the statute, authorized the defendant to call on the court to compel Mr. Kimball to produce the paper in question. We are of opinion, therefore, that the county court ought not to have compelled Mr. Kimball to produce the bill of sale, and that his duty to his client required him not to produce it, except in obedience to an order of the court.

We are of opinion, also, that the bill of sale, as it is termed, did not impose upon the plaintiff precisely the duty which the county court thought was required of him, as appears by their charge to the jury. The bill of sale was evidently intended as a security for his demand against the defendant ; and further to enable him to realize a more speedy payment than he could otherwise obtain.

ORLEANS,
*March,*
1832.

Durkee
*vs.*
Leland.

It was left optional with him at what time to take possession of the buckets and kettle, or whether to take possession or not. Until he did take the actual possession, there was nothing to prevent the defendant from using them as before, or taking any measures to secure them from dilapidation and waste. By paying the note, they would have immediately become the property of the defendant. The plaintiff could only be accountable for those of which he had the possession ; and not for those, unless he had so conducted as to manifest an intention to make them his own, or had made them his own by such gross negligence as ought to make him accountable.

> The judgement of the county court is, therefore, reversed, and a new trial granted.